IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| JACK E. BRADFORD and COLLEEN BRADFORD,<br><br>    Plaintiffs,<br><br><br><br><br><br>        vs.<br><br><br><br>KENT WIGGINS and SCOTT R. WOMACK,<br><br>      Defendants. | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTIONS TO STRIKE<br><br><br><br><br><br>Case No. 1:05-CV-00085 PGC |

After entering pleas of no contest in abeyance in state court, the plaintiffs, Jack E.

Bradford and Colleen Bradford, filed this action, pursuant to 42 U.S.C. § 1983, alleging that the

defendants, Kent Wiggins and Scott R. Womak (collectively the deputies), unlawfully seized and

detained them and caused their unlawful arrest, false imprisonment, and prosecution in violation

of the Fourth, Fifth, Sixth, and Fourteenth Amendments.  In addition to seeking relief pursuant to

Section 1983, the Bradfords seek relief pursuant to 42 U.S.C. §§ 1981 and 1981a.  They also

assert conspiracy claims pursuant to 42 U.S.C. § 1985(2) and pendent state tort claims.

The deputies move for summary judgment, contending that the Bradfords' claims have no basis in law or fact and are barred by judicial estoppel and qualified immunity. The Bradfords oppose the summary judgment motion.

The court agrees with the deputies that the Bradfords' claims are without merit or are barred by qualified immunity or judicial estoppel. Accordingly, the court grants the deputies' motion for summary judgment.

After the summary judgment motion was fully briefed, the Bradfords' counsel submitted supplemental affidavits. The deputies move to strike the supplemental affidavits. The deputies also request sanctions. The Bradfords oppose the motions. As the supplemental affidavits were not timely filed, contain legal conclusions and opinions, and do not create any issue of material fact, the court grants the deputies' motions to strike. The court denies the request for sanctions.

## BACKGROUND

When considering a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.[1]  Viewed in this light, the record (including videotapes) reflects the following facts. At all relevant times, the Box Elder County Sheriff's Office employed the deputies. On August 16, 2003, Deputy Wiggins observed the Bradfords' daughter-in-law, Debra, allegedly speeding. Deputy Wiggins attempted to stop Debra by turning on his lights and siren. Debra, however, refused to stop, proceeded to her residence, and pulled into her driveway. Deputy Wiggins followed Debra to her residence. Deputy Wiggins then ordered Debra to provide her license and registration and to leave her vehicle. Debra refused and

---

[1]*See Cortez v. McCauley,* 438 F.3d 980, 988 (10th Cir. 2006).

screamed for her husband and the Bradfords' son, Michael.

Michael emerged from the residence, screaming profanities.  Michael has a history of weapons and assault offenses of which Deputy Wiggins was aware.  Deputy Wiggins instructed Michael to return inside and called for back-up.  Michael disappeared behind the residence. Unbeknownst to Deputy Wiggins, Michael reentered the residence and called his mother, the plaintiff Mrs. Bradford, and requested that she witness the events outside the residence.  After the first back-up officers (Deputy Womak and another officer) arrived, Deputy Wiggins and the other officer removed Debra from her vehicle and arrested her.  Shortly thereafter, the Bradfords arrived.  By that time, several other armed officers and police vehicles were outside the residence.

The parties dispute whether the officers' vehicles blocked the road in front of the residence and whether the Bradfords had to maneuver around the vehicles.  Both deputies' dashboard cameras recorded the events on August 16.  The videos are slightly obscured by the sun and the audio is intermittent.  The videos show the road was not completely blocked, but it is unclear whether the Bradfords had to maneuver around the police vehicles.  Accordingly, for purposes of this motion, the court assumes the Bradfords did not have to maneuver around the vehicles.

The videos, officer incident reports, and the Bradfords' plea hearing testimony show that the officers repeatedly ordered the Bradfords leave the area.  In particular, when the Bradfords parked their car, Deputy Wiggins, among other officers, ordered the Bradfords to stay in their car and to leave immediately.  The Bradfords refused and got out of their car.  The video shows the

Bradfords approaching the officers at a quick pace.  The video shows arm waving as the Bradfords spoke to the officers about drawing Michael out of the residence.

Shortly thereafter, Michael emerged from the residence and approached the officers.  The officers' reports and Mr. Bradford's plea hearing testimony establish that Michael yelled "shoot me" twice.  Michael placed his hands in the air.  An officer then tackled Michael and handcuffed him.

The deputies and the Bradfords offer different versions of the interactions between the deputies and the Bradfords that occurred simultaneously with Michael's arrest.  The deputies allege that when Michael was tackled, the Bradfords tried to push their way past the officers.  Deputy Womak alleges that he then extended his arm with an open hand to try to stop Mrs. Bradford from moving towards Michael.  Mrs. Bradford then moved away.  The deputies allege that Deputy Wiggins placed Mr. Bradford in a wrist lock and grabbed Mrs. Bradford by the elbow and started pulling them away from the area.  The deputies allege that Mrs. Bradford tripped and fell to the ground.  Another officer placed her right arm in a twist lock.  Deputy Wiggins and the other officer then walked the Bradfords to their car.  Deputy Wiggins pushed Mr. Bradford up against their vehicle and told him to calm down and stay out of the way or he would be arrested.  The Bradfords were then released.

Mrs. Bradford contends that Mr. Bradford aided the police by convincing Michael to leave the home and the officers falsely claim that they were trying to keep them out of the way.  Mrs. Bradford further attests that after the officer tackled Michael, they merely stepped to the left to view Michael.  Mrs. Bradford attests that Deputy Wiggins pushed them back and then Deputy

Womak pushed her down.  Mrs. Bradford attests that the officers falsely claim that she tripped.

Mrs. Bradford attests that Deputy Wiggins body-slammed Mr. Bradford into their vehicle.  The

Bradfords allege that Mrs. Bradford was bruised and that Deputy Wiggins caused physical injury

to Mr. Bradford's shoulder.  After the deputies assaulted them, they left the scene.

        The court assumes for purposes of this motion that the Bradfords aided the officers in

drawing Michael from the home.  After reviewing the video, however, it is clear that as the

officers were arresting Michael, Mrs. Bradford pushed her way towards Michael and Mr.

Bradford stepped towards him.  The video shows the officers were trying to prevent the

Bradfords from moving towards Michael.  The audio indicates that Mr. Bradford was told he

would be arrested, but does not show Mrs. Bradford tripping or being pushed down or Mr.

Bradford being slammed against their vehicle.  For purposes of this summary judgment motion,

the court assumes that Deputy Womak pushed Mrs. Bradford down and she was bruised and that

Deputy Wiggins caused physical injury to Mr. Bradford's shoulder when slamming him against

the vehicle.

        Following these events, the deputies and the other officers prepared incident reports.

Eight of the reports indicate that the officers ordered the Bradfords to leave the scene, but that

they refused.  In addition to an incident report, Deputy Wiggins submitted a probable cause

statement supporting the arrest of Michael.  It is undisputed, however, that neither of the deputies

arrested the Bradfords or requested arrest warrants for the Bradfords.

        Based upon unspecified "information" provided by Deputy Wiggins, on September 25,

2003, the Box Elder County prosecutor filed an information charging the Bradfords with Rioting,

a third degree felony, in violation of Utah Code Ann. § 76-9-101.  On October 20, 2003, the

Bradfords were summoned to appear in state court and at the county jail for booking and release.

The Bradfords complied with the summons and were booked and released.

Following their arraignment, on February 11, 2004, the Bradfords entered no contest

pleas of abeyance to disorderly conduct, in violation of Utah Code Ann. § 76-9-102.  The terms

of the plea agreement were that following successful completion of twelve months probation and

payment of a fine, the charges would be dismissed.  At the plea hearing, the court inquired as to

what the Bradfords had done wrong and both Bradfords admitted that they disobeyed the

officers' commands to leave the area.

On March 22, 2005, following completion of the plea agreement, the Bradfords filed this

action.  Mrs. Bradford now claims that she pleaded no contest (an *Alford* plea) out of fear of

being wrongfully convicted of a felony and that she was told an *Alford* plea should not affect this

action.  In this action, the Bradfords contend that the deputies violated the Fourth, Fifth, Sixth,

and Fourteenth Amendments when the deputies (1) made contact with them; (2) seized them; (3)

detained them without reasonable suspicion; (4) caused their arrest/booking without probable

cause; and (5) caused their malicious prosecution or prosecution without probable cause.  They

allege that the deputies caused their unlawful arrest and prosecution by: (1) slanting probable

cause statements; (2) falsifying probable cause statements; (3) deceiving or misleading

prosecutors and the court to believe probable cause existed when it did not; and (4) making

material misstatements and omissions in an effort to obstruct justice when presenting the case to

prosecutors and the court during screening.  The Bradfords additionally allege that the deputies

conspired to violate their constitutional rights.  In particular, they allege that the deputies

screened the charges with prosecutors because of bias towards their son Michael or to intimidate

the Bradfords to compel Michael to accept a plea for his pending changes.  The Bradfords also

contend that their baseless prosecution constitutes defamation and that they have suffered

emotional distress and damage to their reputations.

     The deputies move for summary judgment, arguing that the Bradfords' claims are without

factual or legal basis and are barred by judicial estoppel, qualified immunity, and/or state law

defenses.  The deputies also move to strike supplemental affidavits filed after the parties had

fully briefed the summary judgment motion.  The Bradfords oppose the motions.

## DISCUSSION

### I.     Summary Judgment Standards

     In general, summary judgment is appropriate if there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law.[2]   In this case,

however, the deputies seek summary judgment on the basis of affirmative defenses.   The

deputies first contend that qualified immunity bars the Bradfords' Section 1983 claims.  Because

of the underlying purposes of qualified immunity, the Tenth Circuit views summary judgment

decisions based on qualified immunity defenses differently from other summary judgment

decisions.[3]  As the plaintiffs, the Bradfords bear the burden of pleading allegations that show that

---

[2]*See* Fed. R. Civ. P. 56(c); *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[3]*See, e.g., Cortez*, 438 F.3d at 988.

the deputies' conduct violated a constitutional right.[4]  The Bradfords must then show that the

right was clearly established.[5]  If the Bradfords make such a showing, the burden shifts to the

deputies to show that there are no genuine issues of material fact and entitlement to judgment as

a matter of law.[6]

The deputies also raise judicial estoppel as an affirmative defense.  In general, where the

defendant seeks summary judgment on the basis of an affirmative defense, the defendant "must

demonstrate that no disputed material fact exists regarding the affirmative defense asserted."[7]  If

the deputies, as the defendants in this matter, meet this initial burden, the Bradfords must then

demonstrate with specificity the existence of a disputed material fact.[8]  If the Bradfords fail to

make such a showing, the affirmative defense (e.g., judicial estoppel) will bar their claim.[9]

## II.    Qualified Immunity Bars the Unlawful Seizure, Detention, and Contact Claims

The Bradfords assert that the deputies violated the Fourth, Fifth, Sixth, and Fourteenth

Amendments when they unlawfully seized them, detained them without reasonable suspicion,

and had contact with them.  The deputies respond that qualified immunity bars these claims.  In

conducting the qualified immunity analysis, the court considers first whether the plaintiffs'

---

[4]*See id; see also Holland v. Overdorff*, 268 F.3d 1179, 1185 (10th Cir. 2001);

[5]*See id.*

[6]*See id.*

[7]*Hutchinson*, 105 F.3d at 564.

[8]*See id.*

[9]*See id.*

allegations, if true, establish a violation of a constitutional right.[10]  If, so the court next considers whether that right was clearly established such that a reasonable person in the defendant's position would have known that his conduct violated that right.[11]  Only if the plaintiffs make this two-part showing does the court consider whether the defendant has shown that there are no genuine issues of material fact that preclude summary judgment.[12]

The court agrees with the deputies that the Bradfords have failed to plead sufficient facts to support any Fifth or Sixth Amendment violations.  Thus, at issue is whether the deputies unlawfully seized, detained, or made contact with the Bradfords in violation of the Fourth and Fourteenth Amendments.

The deputies argue that Bradfords' unlawful seizure and detention claims are without merit because they never seized nor detained the Bradfords.  The court agrees that the allegations and evidence do not show that the deputies seized or detained the Bradfords.  Because there was no seizure or detention, there was no violation of the Fourth Amendment's prohibition of unreasonable seizures.

A seizure occurs if "'there is a governmental termination of [the plaintiffs'] freedom of movement through means intentionally applied.'"[13]  "A person is seized within the meaning of the Fourth Amendment when 'a reasonable person would believe that he or she is not "free to

---

[10]*See Roska v. Peterson*, 328 F.3d 1230,1239 (10th Cir. 2003).

[11]*See id.*

[12]*Holland,* 268 F.3d at 1186.

[13]*Id. at* 1187 (quoting *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989)).

leave.""""[14]

      The Bradfords maintain that the deputies seized them by physically assaulting them during the arrest of their son.  The deputies maintain that, under *Roska v. Peterson*,[15] the Bradfords were not seized.  In *Roska*, the plaintiffs asserted that two social workers violated their Fourth Amendment right to be free of unreasonable use of force by pushing them against a wall as the social workers were attempting to remove a child from the home without a warrant.[16] Because nothing indicated that the plaintiffs were not free to leave, but rather that they had been allegedly told to leave, the Tenth Circuit could not say that they were seized under the Fourth Amendment.[17]  The Tenth Circuit then went on to conclude that the Fourteenth Amendment was not violated, noting, *inter alia*, that the social workers had not caused serious physical injury. [18]

      The court agrees that the present case is like *Roska*.  Most important, far from trying to detain or seize the Bradfords, the officers repeatedly told them to leave the scene.  The Bradfords refused to do so.  Mrs. Bradford pushed her way towards Michael and Mr. Bradford stepped towards him as the officers were attempting to arrest Michael.  The officers told the Bradfords to back off and physically removed them from the scene.

      The Bradfords emphasize that Deputy Womak pushed Mrs. Bradford to the ground and

---

[14]*Roska*, 328 F.3d at 1243 (quoting *Florida v. Bostick*, 501 U.S. 429, 435 (1991)).

[15] 328 F.3d 1230 (10th Cir. 2003).

[16]*See id* at 1242.

[17]*See id.*

[18]*See id.* at 1243.

that Deputy Wiggins slammed Mr. Bradford against their vehicle.  However, even though the deputies physically removed the Bradfords away from the scene, nothing in the record indicates to this court that the Bradfords were not "free to leave," the touchstone for a Fourth Amendment seizure.

Even assuming that the Bradfords were somehow briefly seized, the Fourth Amendment only demands that officers act reasonably under the totality of the circumstances.[19]  Mrs Bradford attests that the officers permitted them to remain to aid the officers and in light of such assistance, the use of force was unreasonable.  The Bradfords, however, had refused the officers' previous, repeated commands to leave the scene.  More important, the video shows that Mrs. Bradford physically pushed her way towards and Mr. Bradford stepped towards Michael as Michael was being arrested.  The officers told the Bradfords to back off, and within seconds, while the officers were still effecting Michael's arrest, the officers physically removed the Bradfords from the scene.  The court agrees with the deputies that physically moving the Bradfords away from the fray while Michael was arrested was a reasonable exercise of authority and did not constitute unreasonable seizure or contact under the circumstances.

Although Mrs. Bradford attests that she was bruised and Mr. Bradford's plea hearing testimony indicates that he had to have surgery on his shoulder, the Bradfords have not specifically claimed, nor cited any remotely analogous authority, showing that the force used was

---

[19] *See Holland,* 268 F.3d at 1188.

clearly excessive under relevant constitutional standards.[20] "A plaintiff may not simply allege a [constitutional] violation in the abstract, but must demonstrate through relevant prior cases that a defendants's actions in a 'more particularized sense' constitute a violation of a constitutional right."[21]

In short, the Bradfords have not met their burden to show that the deputies violated their constitutional rights and that such rights were clearly established.  Accordingly, the court concludes that the Bradford's unlawful seizure, detention, and contact claims are without merit and are barred by qualified immunity.

## III.    Judicial Estoppel Bars the False Arrest and Baseless Prosecution Claims

The Bradford's next argue that they were falsely arrested and baselessly prosecuted in violation of the Fourth and Fourteenth Amendments.  The court agrees with the deputies that judicial estoppel bars these claims.

Judicial estoppel is based upon the principle that

> "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."[22]

The Bradfords contend that judicial estoppel does not apply because their state court pleas were no contest or *Alford* pleas, and therefore cannot be used against them here.  The court agrees

---

[20]*Cf. Roska*, 328 F.3d at 1243 (discussing excessive force claims under Fourth and Fourteenth Amendments).

[21]*Douglas v. Dobbs*, 419 F.3d 1097, 1011 (10th Cir. 2005) (citation omitted).

[22]*Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (*quoting  Davis v. Wakelee,* 156 U.S. 680, 689 (1895)).

with the deputies that the Bradfords are confusing issue and claim preclusion and judicial

estoppel.  In *New Hampshire v. Maine,*[23] the United States Supreme Court specifically

distinguished claim and issue preclusion from judicial estoppel.[24]  The court noted that claim

preclusion bars successive litigation of the same claim and issues preclusion bars successive

litigation of the same issue of fact or law actually litigated.[25]  Judicial estoppel, however,

equitably bars assertion of a position in one case then relying on a contradictory position to

prevail in another case. [26]  The purpose of claim and issue preclusion is to protect the interests of

the parties in litigating previously litigated claims, where as judicial estoppel is protect the

integrity of the courts.[27]  Thus, while claim or issue preclusion might not bar the Bradshaw's

claims, judicial estoppel may bar their claims.

The court is persuaded that judicial estoppel may apply although the Bradfords entered no

contest pleas in abeyance.  Although without expressly addressing the issue as to whether judicial

estoppel applies to a no contest plea in abeyance or an *Alford* plea entered in state court, in

*Johnson v. Lindon City Corp.*, the Tenth Circuit concluded that judicial estoppel barred false

arrest and prosecution claims in a case very similar to the present where the plaintiffs had entered

---

[23]532 U.S. 742 (2001).

[24]*See id. at* 748-49.

[25]*See id.*

[26]*See id.* at 749.

[27]*See Lowery v. Stovall, 92 F.3d 219, 223 & n.3 (4th Cir. 1996)* (noting judicial estoppel
does not require issue to be actually litigated and may apply where collateral estoppel may not
apply).

pleas in abeyance.[28]  In *Johnson*, the Circuit noted the following factors typically used to

determine whether to apply judicial estoppel:  (1) "'a party's later position must be "clearly

inconsistent" with its earlier position[]'. . . [and] the position to be estopped must generally be

one of fact rather than of law or legal theory";[29] (2) "'whether the party has succeeded in

persuading a court to accept that party's earlier position, so that judicial acceptance of an

inconsistent position in a later proceeding would create "the perception that either the first or the

second court was misled"'";[30] and (3) "'whether the party seeking to assert an inconsistent

position would derive an unfair advantage or impose an unfair detriment on the opposing party if

not estopped.'"[31]  *Johnson* is instructive as to the application of the factors here.

As to the first factor, in *Johnson,* the plaintiffs had entered in to pleas in abeyance to

assault charges, then filed an action against the city and officers, alleging unlawful arrest and

imprisonment under Sections 1983 and 1985.[32]  In entering their pleas, the plaintiffs admitted

that they attempted to use unlawful force or violence to do bodily injury against the arresting

officer.[33]  The Tenth Circuit concluded that if the plaintiffs acted as they admitted when entering

---

[28]*See Johnson,* 405 F.3d at 1067, 1069-70 (concluding judicial estoppel barred Section 1983 claims for unlawful arrest and imprisonment where plaintiffs entered pleas in abeyance admitting that they were guilty of assault, then sued city and officers).

[29]*See id.* at 1069 (*quoting New Hampshire*, 532 U.S. at 750).

[30]*Id.* (*quoting New Hampshire*, 532 U.S. at 750) (citation omitted).

[31]*Id.* (quoting *New Hampshire*, 532 U.S. at 751).

[32]*See id.* at 1066-67.

[33]*See id.* at 1069.

their pleas,  the arresting officer had probable cause to arrest them and therefore the arrest was lawful.[34]  Accordingly, the Tenth Circuit found that the first factor was met.[35]

In the present case, the Bradfords were each charged with Rioting in violation of Utah law – specifically that each "simultaneously, with two or more other persons . . . engage[d] in tumultuous or violent conduct and thereby knowingly or recklessly create[d] a substantial risk of causing public alarm."[36]  The Bradfords, however, represented by counsel, agreed to mediate the charge and entered pleas of abeyance to Disorderly Conduct.  In doing so, they admitted, *inter alia*, that they refused to leave the scene although the officers repeatedly ordered them to do so. The court is satisfied the Bradfords' factual admissions during the plea hearing are clearly inconsistent with their position in this action.  Additionally, the admissions and the uncontroverted material statements in Deputy Wiggins' incident report, which are largely supported by the video, are sufficient to support both the Bradfords' prosecution and summons. Accordingly, the prosecution and arrest were lawful.  The first factor is therefore satisfied.

As to the second factor, in *Johnson*, the Tenth Circuit noted that under Utah law, a court must accept a plea in abeyance in full compliance with Rule 11 of the Utah Rules of Criminal Procedure.[37]  Rule 11 requires that the court find a factual basis for plea.[38]  A factual basis is

---

[34]*See id.*

[35]*See id.*

[36]Utah Code Ann. § 76-9-101.

[37]*See id.* at 1069.

[38]*See* Utah R. Crim. P. 11(e)(4)(B).

sufficient it establishes that the crime was committed, or if the defendant was unable to admit culpability, that the prosecution has sufficient evidence to establish a substantial risk of conviction.[39]  In *Johnson*, the Tenth Circuit concluded that because the plaintiffs had convinced the Utah court that they attempted to do bodily harm but then attempted to convince the federal court that they did not, the clear perception would be that either the Utah court or the federal court was misled.[40]

Similarly here, the Bradfords entered into a plea in abeyance pursuant to Rule 11 of the Utah Rules of Criminal Procedure.  The Utah court specifically inquired as what the Bradfords did wrong and the Bradfords convinced the court that they had committed disorderly conduct by admittedly refusing to leave although the officers had ordered them to do so.  If this court were to accept the Bradfords' position, the clear perception would be that either the Utah court or this court was misled as whether the Bradfords committed disorderly conduct.

As to the third factor, in *Johnson,* the Tenth Circuit noted that by entering pleas in abeyance, the plaintiffs received a substantial benefit – they faced being convicted of assault but by pleading, the state agreed to dismiss the charges as long as plaintiffs violated no laws for six months.[41]  Because the plaintiffs carried out their end of the bargain, their charges were dropped.[42]  Although the plaintiffs had valid reasons for pleading, "[t]o allow [the p]laintiffs to

---

[39]*See id.*

[40]*See Johnson*, 405 F.3d at 1069-70.

[41]*See id.* at 1070.

[42]*See id.*

accept the benefit of the Pleas in Abeyance and, in the next breath, sue for civil damages stemming from their arrest for crimes they admittedly committed would clearly undermine the integrity of the judicial system." [43]

Similarly in the present case, the Bradfords have received their benefit.  They faced being convicted of Rioting, but by their pleading in abeyance to Disorderly Conduct, the county attorney agreed on behalf of the state to dismiss the charges at the end of twelve months so long as the Bradfords complied with the plea agreement's terms.  The Bradfords have complied with the agreement.  There is no evidence that the charges will not be dismissed.  To allow the Bradfords to now sue for civil damages stemming from their arrest and prosecution would undermine the integrity of the judicial system.

Without citing any authority supporting their position, the Bradfords argue that judicial estoppel should not apply where the deputies' statements were false.  The information provides that the rioting charge was based upon "information" provided by Deputy Wiggins.  As a threshold matter, there is no indication that any information from Deputy Womak was relied upon in prosecuting or summoning the Bradfords.  Accordingly, summary judgment is appropriate as to him.

The Bradfords do not dispute that Deputy Wiggins prepared no affidavit, no probable cause statement, and no arrest warrant for either of the Bradfords.  The Bradfords also do not dispute that the information was based at least in part upon Deputy Wiggins' incident report.  In that report, Deputy Wiggins asserted that: (1) the Bradfords maneuvered around a road block; (2)

---

[43]*Id.*

Deputy Wiggins ordered the Bradfords to stay in their vehicle and to leave the area but they refused and exited their vehicle; (3) Deputy Wiggins and other officers told them to return to their vehicle but they demanded to speak with Michael; (4) Michael exited the residence yelling "shoot me, shoot me"; (5) an officer tackled Michael and the Bradfords tried to push by Deputy Wiggins; (6) Deputy Wiggins placed Mr. Bradford in a wrist lock and grabbed Mrs. Bradford by her elbow to move them away; (7) Mrs. Bradford tripped and fell and another officer grabbed her; and (8) Deputy Wiggins pushed Mr. Bradford against their vehicle while instructing him to calm down.  Mrs. Bradford attests that the assertions that the Bradfords maneuvered around a road block and that she tripped and fell are false.  However, whether the Bradfords maneuvered around a road black and whether Mrs. Bradford tripped or was pushed do not preclude summary judgment.  The Bradford's very own admissions that they refused the officers' orders to leave the scene and the other facts asserted in Deputy Wiggins' incident report support probable cause for their prosecution and arrest.

Moreover, the video supports the other facts in the incident report.  The videos show a tense scene, officers repeatedly telling the Bradfords to leave, and the Bradfords hurriedly approaching the officers.  Minutes later, as Michael was being arrested, the videos show the Bradfords pushing towards Michael, and the officers ordering the Bradfords to back off.  Although the Bradfords offer their interpretation of the videos, the court is not bound by their interpretation.

The court recognizes that judicial estoppel has been limited to parties or their privies.[44]

Here, however, the Bradfords do not contend that the deputies are not privies.  Thus, judicial

estoppel bars the Bradfords claims against the deputies.

## IV.     The Deputies are Entitled to Summary Judgment on the Bradfords' Conspiracy Claim

In relevant part, Section 1985 provides liability for conspiracy to interfere with civil

rights:

> If two or more persons in any State . . . conspire to deter, by force,
> intimidation, or threat, any party or witness in any court of the United
> States from attending such court, or from testifying to any matter pending
> therein, freely, fully, and truthfully, or to injure such party or witness in his
> person or property on account of his having so attended or testified . . . ; or
> if two or more persons conspire for the purpose of impeding, hindering,
> obstructing, or defeating, in any manner, the due course of justice in any
> State . . . with intent to deny to any citizen the equal protection of the laws,
> or to injure him or his property for lawfully enforcing, or attempting to
> enforce, the right of any person, or class of persons, to the equal protection
> of the laws.[45]

Mrs. Bradford attests that the prosecution was initiated because of the sheriff's and the

mayor's bias towards Michael or to force Michael to plead to charges filed against him.

However, the Bradfords have not sued the sheriff, the mayor, or the prosecutor.  There is no

evidence that the deputies improperly influenced the prosecutor to file an information, requested

---

[44]*See Nebeker v. Utah State Tax Comm'n*, 34 P.3d 180, 187 (Utah 2001) ( "Under judicial estoppel, 'a person may not, to the prejudice of another person, deny any position taken in a prior judicial proceeding between the same persons or their privies involving the same subject matter, if such prior position was successfully maintained'" (*quoting Tracy Loan & Trust Co. v. Openshaw Inv. Co.*, 102 Utah 509, 132 P.2d 388, 390 (1942)).

[45]42 U.S.C. § 1985(2).

the arrest of the Bradfords, or otherwise conspired against the Bradfords.  Accordingly, the court concludes that the deputies are entitled to summary judgment on this claim.

V.      **The Deputies are Entitled to Summary Judgment on the Bradfords' Defamation Claims**

In their complaint, the Bradfords allege that the "attempt to baselessly prosecute" them is libel and slander per se, that the malice and reckless indifference is implied where, *inter alia*, criminal conduct is charged, and the deputies actions have been with malice and a knowing and reckless indifference to the Bradfords.  In their motion for summary judgment, the deputies contend, *inter alia*, that the Bradfords' conclusory allegations are insufficient to state a claim, the deputies did not specifically charge the Bradfords with criminal conduct, and that the Utah Government Immunity Act and the governing statute of limitations bar the claims.  In opposition, the Bradfords' counsel wholly fails to respond the deputies' contentions.

It is not the burden of the court to construct an argument for the Bradfords.[46]  Moreover, based upon the record, the court cannot say that the Bradfords' defamation claims survive the Utah Governmental Immunity Act[47] or the statute of limitations.[48]  Accordingly, the court concludes that the deputies are entitled to summary judgment on these claims.

VI.     **The Bradfords' Have Not Pleaded Sufficient Facts to Support Their Remaining Claims**

The Bradfords seek relief under Sections 1981 and 1981a.  The also summarily assert

---

[46]*See Mitchell v. City of Moore*, 218 F.3d 1190, 1198-99  (10th Cir. 2000).

[47]*See* Utah Code Ann. §§ 63-30-4(3)(b); 63-30-11(1) (Lexis Nexis Supp. 2003).

[48]*See* Utah Code Ann. § 78-12-29 (Lexis Nexis 2002 & Supp. 2005).

claims of false imprisonment and intentional infliction of emotional distress.  The court agrees

with the deputies that the Bradfords have failed to allege sufficient facts to state claims for relief.

The court therefore grants summary judgment to the deputies as to these claims.

**VII.    The Supplemental Affidavits Do Not Create Material Issues of Fact**

The deputies move to strike the supplemental affidavits of Mrs. Bradford and Allen

Cheney, Michael and Debra Bradford's neighbor.  These affidavits were filed after the summary

judgment motion was fully briefed.  Rule 56 of the Federal Rules of Civil Procedure allows the

court to "permit affidavits to be supplemented or opposed by depositions, answers to

interrogatories, or further affidavits."[49]  Here, however, the Bradfords have not sought leave of

court to file the supplemental affidavits and have not established that they preclude summary

judgment on their pleaded claims.

Additionally, Rule 56 requires that "affidavits shall be made on personal knowledge [and]

shall set forth such facts as would be admissible in evidence."[50]  Paragraphs of the affidavits

contain opinions without foundation or offer legal conclusions, rather than attesting to personal

knowledge of events.[51]

Moreover, even liberally construing the affidavits, they do not create issues of material

fact.  For example, in his affidavit, Mr. Cheney attests that the officers told the Bradfords to "get

back in their car and leave." He then attests that after the Bradfords yelled, "That's our son in

---

[49]Fed. R. Civ. P. 56(e).

[50]Fed. R. Civ. P. 56(e).

[51]*See* Aff. of Alan Cheney at ¶¶11, 12, 18, 19, 21, 25; Supp. Aff. of Colleen Bradford at
¶9.

there," the officers let them stay.  Mr. Cheney does not explain how he knows that the officers let

the Bradfords stay.  Even assuming, however, that the officers permitted the Bradfords to stay,

circumstances changed when Mrs. Bradford pushed and Mr. Bradford stepped towards Michael

as the officers were arresting him.  As discussed above, under the circumstances, it was wholly

reasonable for the officers to physically remove the Bradfords away from the fray.  Accordingly,

the court grants the motions to strike.

     In addition to moving to strike the affidavits, the deputies request sanctions.   They ask

the court to either (1) strike the supplemental affidavits of Colleen Bradford and Allen Cheney or

(2) grant summary judgment to them.

     The court notes that the deputies' memorandum in support of their request for sanctions

was not filed with the request as required by court rules.[52]  Regardless, the court's order granting

summary judgment to the deputies moots the request for sanctions.

## CONCLUSION

     Accordingly, the deputies' Motion for Summary Judgment (#11) and motions to strike

---

[52]*See* D.U. Civ. R. 7-1(b).

(#24, #26) are HEREBY GRANTED.  The deputies' request for sanctions (#28) is

DENIED as moot.  The clerk of the court is directed to close this case.

SO ORDERED.

DATED this 23rd day of June, 2006.

BY THE COURT:

Paul G. Cassell
United States District Judge